1
2
3
4
5
6
7
8
9  DISTRICT JUDGE BENJAMIN H. SETTLE
   MAGISTRATE JUDGE THERESA L. FRICKE
10
   **UNITED STATES DISTRICT COURT**
   **WESTERN DISTRICT OF WASHINGTON**
11 **AT TACOMA**
12

ROBERT EARLE JOHNSON,                      NO. 3:16-cv-05738-BHS-KLS
13
                              Plaintiff,    DEFENDANTS' MOTION FOR
14                                          SUMMARY JUDGMENT
15    v.
                                            **NOTE ON MOTION CALENDAR**
16 RICHARD MORGAN, et al.,                  **December 8, 2017 at 6:30 pm**
                                            **WITHOUT ORAL ARGUMENT**
17                            Defendants.

18        The Defendants, G. STEVEN HAMMOND, FORREST MEWES, RICHARD

19 MORGAN, JOHN REIDY, and BERNARD E WARNER respectfully move this Court for an

20 order granting Summary Judgment, dismissing this case.

21                          **I.      INTRODUCTION**

22        This is a lawsuit brought by inmate Robert Earle Johnson pursuant to 42 U.S.C. § 1983.

23 Mr. Johnson has sued a number of individuals including three former Secretaries of the

24 Department of Corrections (DOC). His claims can be categorized in three distinct areas:

25        1.     Failure to provide him with lens replacement surgery to eliminate a cataract in

26               his right eye.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

1

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

2.      Failure to conduct an MRI on his left knee and failure to provide him with serious opiate pain medication to treat his knee.

3.      Accidently being sprayed by Defendant Forrest Mewes with O.C. (pepper spray) in retaliation for his previous litigation activity.

Each of these claims does not have merit and the Defendants will demonstrate below that this Court should grant this Motion for Summary Judgment.

## II.      STATEMENT OF FACTS

### A.      Mr. Johnson's Cataract Treatment

Mr. Johnson has long term diabetes. Since about 2005, he has been receiving treatment for a potential very side effect of diabetes. This is a condition called diabetic retinopathy which poses the serious threat to a diabetic's retina and can lead to complete and irreversible blindness. While Mr. Johnson has been followed by Defendant John F. Reidy, optometrist, he has also been long term extensively treated by an outside Ophthalmologist for this condition. So far, this treatment has been successful and Mr. Johnson still has vision in both his eyes.

In addition to his diabetic retinopathy, over time Mr. Johnson developed a cataract in his left eye. This is essentially a clouding of the lens and can increase over time. One important concern with a cataract for an individual with diabetic retinopathy, is that, over time, it may prevent the health care providers from being able to fully visualize the patient's retina which would jeopardize the ability to treat all problems that may affect the retina.

Mr. Johnson initially requested that Dr. Reidy refer him out for cataract surgery (lens replacement.) Dr. Reidy followed this condition and initially determined that Mr. Johnson's condition did not meet the DOC requirements for surgery. A principle factor in this medical decision is that the cataract, at that time, did not prevent complete visual examination of Mr. John's retina for diagnosis and treatment. However, Dr. Reidy wanted

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

2

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

to follow this condition more closely so he scheduled a follow up in six months which is half the time for the normal one year follow up. At this follow up, on March 9, 2016, Dr. Reidy determined that Mr. Johnson should receive the cataract surgery and referred him to go to the outside consultant for this surgery. Mr. Johnson received this surgery and, at a follow up appointment, Dr. Reidy determined that he now has 20/20 vision in his right eye and 20/30 vision in his other eye.

**B.      Treatment of Mr. Johnson's Knee**

At some time in 2015 Mr. Johnson reported to his primary care provider, Physician's Assistant (PA) Johnathon Neau that he was having pain in his left knee. Mr. Johnson was provided with an X-Ray on February 10, 2015. Declaration of G. Steven Hammond, M.D., in Support of Defendants' Motion for Summary Judgment (Declaration of Dr. Hammond), Attachment A, p. 005. PA Neau examined Mr. Johnson and found on examination that Mr. Johnson demonstrated a negative varus, negative valgus, negative valgus, negative Lachman, negative anterior and posterior drawer, negative patellar grind and a negative McMurray. These are manipulative tests and are indicative of a stable knee which support a finding that there no ligament or functionally significant meniscus damage. Declaration of Hammond, ¶10. PA Neau recommended and performed two injections on Mr. Johnson which resulted in at least temporary relief which supports PA Neau's diagnosis anserine bursitis. Declaration of Hammond, ¶11. PA Neau twice accommodated Mr. Johnson's request to seek Care Review Committee (CRC) approval for an MRI, this was determined by both panels as not medically necessary. Dr. Hammond agrees with these findings. Declaration of Hammond, ¶12. Dr. Hammond, the DOC Medical Director at the time, went out of his way to personally examine Mr. Johnson and found no major pathology in his knee. Declaration of Hammond, ¶10.

With regard to Mr. Johnson's desire for opioid pain medicine for his knee, this is usually medically inappropriate to treat chronic musculo-skeletal pain. Declaration of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

3

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

Hammond, ¶13. It is Dr. Hammond's opinion that the decision not to treat Mr. Johnson's knee pain with chronic opioid medication was reasonable and appropriate. Declaration of Hammond, ¶13.

**C.     Alleged Retaliation by Defendant Forrest Mewes.**

On October 14, 2015 at about 5:00 PM Officer Mewes was walking from the MSC, B Unit to L Building when he noticed two inmates preparing to fight. Declaration of Forrest J. Mewes, in Support of Defendants' Motion for Summary Judgment (Declaration of Mewes), ¶4. He used O.C. when the inmates reused his commands. He had no idea that Mr. Johnson would walk into this situation. Declaration of Mewes, ¶4.

Officer Mewes did not know Mr. Johnson and prior to this lawsuit had no knowledge of Mr. Johnson. Declaration of Mewes, ¶3. Similarly, prior to this incident, Mr. Johnson did not know Officer Mewes and has no knowledge whether Mewes knew anything about his previous protected litigation.

## III.     ISSUES PRESENTED

**1.     Whether summary judgment should be granted to Defendants on the medical issues because Mr. Johnson's claims are moot or amount only to a dispute between him and his providers about the proper course of treatment?**

**2.     Whether Defendant Mewes is entitled to summary judgment because he can't be liable for retaliation for a protected activity he never knew about?**

**3.     Whether all the former Secretaries are entitled to summary judgment when they had no personal participation in any actions alleged by Mr. Johnson and there is no supervision liability under § 1983?**

**4.     Whether all Defendants are entitled to qualified immunity because there is no clearly established law that their actions constitute a constitutional violation?**

## IV.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

4

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1   *other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving

2   party is entitled to summary judgment if the evidence produced by the parties permits only one

3   conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if

4   summary judgment is appropriate, the court must consider whether a particular fact is material

5   and whether there is a genuine dispute as to that material fact left to be resolved.

6   Fed. R. Civ. P. 56(c). The materiality of a given fact is determined by the required elements of

7   the substantive law under which the claims are brought. *Anderson*, 477 U.S. at 248. Factual

8   disputes that do not affect the outcome of the suit under the governing law will not be

9   considered. *Id.* Where there is a complete failure of proof concerning an essential element of

10  the non-moving party's case, all other facts are rendered immaterial, and the moving party is

11  entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

12       Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party

13  opposing the motion must do more than simply show that there is some metaphysical doubt as

14  to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

15  The opposing party cannot rest solely on his pleadings but must produce significant, probative

16  evidence that would allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249-50.

17  In other words, the purpose of summary judgment "is not to replace conclusory allegations of

18  the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife*

19  *Federation*, 497 U.S. 871, 888 (1990).

20                        **V.    ARGUMENT**

21  **A.    Mr. Johnson Cannot Show Deliberate Indifference in His Medical Care**

22       Deliberate indifference to an inmate's serious medical needs violates the Eighth

23  Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S.

24  97, 105 (1976). However, the Eighth Amendment is not a requirement that inmates "have

25  unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Instead, the

26  Eighth Amendment is violated only when an inmate is denied the minimal civilized measure of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

5

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An inmate "is not entitled to demand specific care. [An inmate] is not entitled to the best care possible. [An inmate] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]." *See Forbes v. Edgar*, 112 F. 3d 262, 267 (7th Cir. 1997). Mere disagreement with the treatment provided is insufficient to establish an Eighth Amendment violation. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Plaintiff must show a chosen course of treatment was medically unacceptable under the circumstances and that this course was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This requires more than a difference of opinion between the prisoner-patient and prison medical authorities regarding treatment. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

DOC has provided Mr. Johnson with an unusually large amount of medical treatment during the course of his incarceration. In the last five years, Mr. Johnson has had 639 on-site medical encounters. Of the 639 on-site medical encounters, 548 were with a physician, physician's assistant, or nurse. 193 of the on-site appointments were with a contracted medical provider. In addition to the on-site medical care Mr. Johnson has received, he has also had 21 off-site medical appointments and at least one transfer to another Department facility to receive medical care. *See* Declaration of Soknara Buth, in Support of Defendants' Motion for Summary Judgment. This is the opposite of deliberate indifference to his care. Mr. Johnson has been seen by the outside ophthalmologist, Dr. Sung on enumerable occasions. He testified that he has seen him on more than 15 occasions. *See* Declaration of John C. Dittman, in Support of Defendants' Motion for Summary Judgment (Declaration of Dittman), Attachment A, p. 12.

### 1.    Cataract

It is not disputed that Mr. Johnson had a cataract in his right eye. However, the evidence submitted indicates that he was adequately followed for this condition. *See* Declaration of John F. Reidy, in Support of Defendants' Motion for Summary Judgment

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

6

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

(Declaration of Dr. Reidy). Mr. Johnson's condition that posed a substantial risk of serious harm risk of harm was his diabetic retinopathy. It is beyond dispute that his cataract condition never jeopardized treatment for this condition. Attachment A to the Declaration of Dr. Reidy shows Mr. Johnson received substantial care for this condition. It is also beyond dispute that the right eye cataract surgery has been performed. And it is undisputed that Mr. Johnson's current correctable vision is excellent. Mr. Johnson is unable to demonstrate any damages and his request for injunctive relief for cataract surgery is moot. He testified in his deposition that the amount of damages he is seeking in his complaint, $125,000.00 was just a "figure." *See* Declaration of Dittman, Attachment A, pp. 13. In addition, any economic loss would be speculation. "It would be speculation, period." *See* Declaration of Dittman, Attachment A, p. 14. This claim should be dismissed.

### 2.    Knee

The only medical evidence in this case indicates that the treatment for Mr. Johnson's knee was reasonable and appropriate. *See* Declaration of Dr. Hammond. He has been given injections and offered and received Physical Therapy for his knee. DOC has provided subtidal testing and treatment, including X-rays, injections and physical therapy. He has even had the Medical Director of the entire DOC health care system personally examine him. This is a far cry from deliberate indifference. The treatment received has resulted in Mr. Johnson reporting improvement in his knee on numerous occasions. *See* e.g. Declaration of Dr. Hammond, Attachment A at pp. 002[1], 025[2], 026[3], and 032[4]. PA Neau has twice accommodated Mr. Johnson by passing on his request for an MRI to the CRC. Both times the panel

---

[1] "Patient reports that his knee had improved some months ago…"
[2] "The patient has been going to physical therapy and feels as though he has made significant improvements."
[3] "The patient reports that his knee is getting significantly better."
[4] Mr. Johnson indicates on Patient Health Care Questionnaire that he has no difficulty sleeping or staying asleep.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

7

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1    determined an MRI was not medically necessary. Dr. Hammond is in accord with this medical

2    finding. *See* Declaration of Dr. Hammond, ¶12.

3        With regard to his request for opioids, the undisputed medical evidence shows that this

4    is not appropriate for Mr. Johnson's condition. It may, in fact, be harmful. *See* Declaration of

5    Dr. Hammond. In his deposition, Mr. Johnson said he came up with the idea of seeking

6    methadone treatment because he was reading case about a lawsuit brought by some different

7    inmate. *See* Declaration of John C. Dittman Attachment, Attachment A, pp. 15-16.

8    **B.    All Damage Claims against Defendants Sued in Their Official Capacity Should Be**
9    **Dismissed**

10       The state and state actors cannot be sued for damages under §1983. Official capacity

11   defendants are not 'persons" under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State*

12   *Police*, 491 U.S. 58 (1989). To the extent that Mr. Johnson seeks damages from any official

13   capacity Defendants, these should be dismissed.

14   **C.    Former Secretary Morgan and Former Secretary Warner Did Not Personally**
     **Participate in Mr. Johnson's Care So Any Individual Capacity Allegations against**
15   **Them Should Be Dismissed**

16       Supervisory officials cannot be held liable under a theory of respondeat superior. *See*

17   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Personal participation is an essential element of a

18   § 1983 claim. *See e.g., Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Prison officials

19   who are not medical providers are not deliberately indifferent when they defer to the judgment

20   of treating medical providers. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004); *Hayes v.*

21   *Snyder*, 546 F.3d 516, 526-28 (7th Cir. 2008); *cf. Peralta v. Dillard*, 744 F3d 1076, 1086-87

22   (9th Cir. 2014). (non-specialist doctor was not deliberately indifferent when he deferred to

23   specialist). Plaintiff cannot present sufficient evidence to demonstrate that former Secretary

24   Warner or former Secretary Morgan was personally involved or personally aware of Plaintiff's

25   medical care. Even if the allegations in his complaint were true and even if he could show that

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

8

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1    the former Secretaries were aware, Plaintiff cannot show that they were deliberately indifferent

2    to his condition. These claims should be dismissed.

3    **D.      Dr. Hammond Should Be Dismissed From This Case**

4           Other than the one occasion that Dr. Hammond examined Plaintiff, the majority of

5    Mr. Johnson's claims relate to Dr. Hammond as Medical Director for DOC. These claims

6    should be dismissed for the same reason as the claims against Defendants Morgan and Warner.

7           With regard to the one examination that Dr. Hammond conducted on November 23,

8    2016, Dr. Hammond noted that Johnson was scheduled to have his request for an MRI

9    considered by the CRC. In spite of Mr. Johnson's allegation that Dr. Hammond refused to

10   provide him with pain medicine, the note clearly reflects that he approved over the counter

11   pain medicine for Mr. Johnson. *See* Declaration of Dr. Hammond, Attachment A at p. 004. To

12   the extent that Mr. Johnson is alleging that Dr. Hammond should have prescribed opioid

13   medication, this is addressed in Dr. Hammond's Declaration at ¶13 as being medically

14   inappropriate for Mr. Johnson. Mr. Johnson cannot provide any evidence to the contrary other

15   than his inexpert disagreement with this course of treatment. As noted above this is insufficient

16   to support an Eighth Amendment claim. *Sanchez*, 891 F.2d at 242.

17   **E.      Defendant Mewes Cannot Retaliate for Protected Activity That He Does Not Even**
18   **          Know About**

19          It is not disputed that officer Mewes did not retaliate against Mr. Johnson. Retaliation

20   for protected activity certainly can violate the Constitution. *Rhodes v. Robinson*, 408 F.3d 559,

21   567 (9th Cir. 2005). Mr. Johnson's claim, however, should be dismissed. Most importantly,

22   officer Mewes did not know Mr. Johnson and had no knowledge of any protected activity on

23   his part *See* Declaration of Mewes. Mr. Johnson testified in his deposition that prior to the

24   incident he did not know and had no involvement with officer Mewes. *See* Declaration of

25   Dittman, Attachment A, p. 6.

26   ///

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

9

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

He further testified that he had no personal knowledge that officer Mewes knew anything about any of Johnson's protective activity. *See* Declaration of Dittman, Attachment A, p. 10.

In addition, the report of the investigation concerning the spraying of O.C. can lead to no other conclusion other than the exposure to Mr. Johnson was anything other than an accident. *See* Attachment A to Declaration of Mewes. Mr. Johnson concedes in his deposition that when he walked out of the infirmary that he witnessed two inmates in a "fight position." *See* Declaration of Dittman, Attachment A, pp. 8-9. He concedes that he heard someone shout "break it up." *See* Declaration of Dittman, Attachment A, p. 9.

**F.      All Defendants are Entitled to Qualified Immunity**

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The determination of qualified immunity is a two step process. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The court first determines whether any constitutional rights were violated. In addition, the court must determine if the law regarding the constitutional right is clearly established. Since *Pearson*, the court can make these determination in either order. The burden to prove the law is clearly established is on the plaintiff. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989).

As shown above there are no constitutional violations in this case. In addition, Plaintiff cannot show that failure to provide a medical test (MRI) for a knee that is stable and diagnosed as anserine bursitis is clearly established. In fact, the law suggests the opposite. Instead, courts have found that providing non-surgical means to treat a knee condition instead of providing surgery does not constitute deliberate indifference. *See e.g.*, *Nelson v. Pacholke et al.*, Case No. 12-5048 RBL/KLS, 2013 WL 4804319, **9-10 (W.D. Wash. Sep. 9, 2013) (finding the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

10

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1  CRC's decision to deny inmate a knee replacement did not constitute deliberate indifference);

2  *Caviness v. Ladner, et al.*, Case No. 09-CV-361-LRA, 2012 WL 1067957, at *6-8 (S.D. Miss.

3  Mar. 29, 2012); *Robison v. Sahota*, Case No. 10-CV-2954 JAM JFM, 2011 WL 3585058, * 1-2

4  (E.D. Cal Aug. 15, 2011) (denying preliminary injunction to require prison officials to provide

5  orthopedic consult for knee and finding no likelihood of success for such claims under the

6  Eighth Amendment).

7  **VI.    CONCLUSION**

8      Defendants respectfully request that this Court grant their Motion for Summary

9  Judgment and dismiss Mr. Johnson's Complaint with prejudice.

10      RESPECTFULLY SUBMITTED this 13th day of November, 2017.

11          ROBERT W. FERGUSON
12          Attorney General

14          s/ John C. Dittman
15          JOHN C. DITTMAN, WSBA #32094
        Assistant Attorney General
16          Corrections Division
        PO Box 40116
17          Olympia, WA 98504-0116
        (360) 586-1445
18          JohnD2@atg.wa.gov

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

11

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that I caused the foregoing Defendants; Motion for Summary Judgment

3   to be electronically filed with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the following:

5        ROBERT EARLE JOHNSON, DOC #12669
         COYOTE RIDGE CORRECTIONS CENTER
6        PO BOX 769
         CONNELL WA 99326-0769
7        Email: doccrccinmatefederal@doc1.wa.gov

8        I declare under penalty of perjury under the laws of the United States of America that

9   the foregoing is true and correct.

10       DATED this 13th day of November, 2017, at Spokane, Washington.

11

12                              s/ Patty Willoughby
                                PATTY WILLOUGHBY
13                              Legal Assistant III
                                Corrections Division
14                              1116 West Riverside Avenue, Suite 100
                                Spokane, WA 99201-1106
15                              (509) 456-3123
                                PattyW@atg.wa.gov
16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:16-cv-05738-BHS-KLS

12

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445