UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT EARLE JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD MORGAN, et al.,<br><br>Defendants. | Case No. 3:16-cv-05738-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>**Noted for June 22, 2018** |

This matter is before the Court on defendants' filing of a motion for summary judgment. Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants for alleged violations of his Eighth Amendment rights. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

On June 4, 2018, the Court granted Mr. Johnson's motion to compel the disclosure of WDOC and CRCC policies regarding the use of pepper spray as Mr. Johnson had requested in interrogatories. Dkt. 94. The Court acknowledged that this may require certain aspects of this summary judgment motion to be deferred. *Id.*

For the reasons set forth below, the undersigned recommends the Court grant in part defendant's motion and dismiss with prejudice Mr. Johnson's claims of deliberate indifference concerning medical treatment under the Eighth Amendment against defendants Hammond, Morgan, Reidy, and Warner. The undersigned recommends that the Court defer summary judgment, pending further discovery, on Mr. Johnson's retaliation claim against defendant

REPORT AND RECOMMENDATION - 1

Mewes. And the undersigned notes that a claim of excessive force under the Eighth Amendment remains, also precluding dismissal of defendant Mewes from this case.

FACTS RELATING TO SUMMARY JUDGMENT

The plaintiff, Mr. Robert Johnson, is an inmate at Coyote Ridge Correction Center in Connell, Washington. He alleges a violation of his Eight Amendment rights regarding a knee condition and cataracts in both eyes. Dkt. 5 at 6-9, 12-17. He also alleges that Defendant Mewes intentionally sprayed him with pepper spray in retaliation for litigation against another correctional officer. Dkt. 5 at 9-10, 15, 17.

A. Eighth Amendment Medical Treatment Claims

1. Knee Pain

Physician's Assistant (PA) Johnathon Neau received a report from Mr. Johnson that he was having substantial pain in his left knee. Dkt. 73, Decl. of G. Steven Hammond (Hammond Decl.) at 4. X-rays of Mr. Johnson's knee were taken on November 2, 2016. Dkt. 73, Hammond Decl. at 3, Dkt. 73-1 Att. A at 5.

PA Neau made an assessment that Mr. Johnson's pain was probably caused by pes anserine bursa. *Id.* at 26. Mr. Johnson received two injections into his anserine bursitis. Dkt. 73 at 4. Both of these injections gave Mr. Johnson some temporary relief. *Id.* PA Neau also suggested physical therapy as treatment, and Mr. Johnson indicated the physical therapy exercises seemed to be working. Hammond Decl., Att. A; Dkt. 73-1 at 22, 24, 25.

Mr. Johnson requested an MRI of his knee first in September 2015 and again in November 2016. *Id.* at 6, 18. These requests were denied by the Department of Corrections Care Review Committee and were deemed as "not medically necessary." *Id* at 8. In November 2016, Mr. Johnson also requested to be prescribed Methadone for pain relief. Plaintiff's Response to Motion for Summary Judgment; Att. 1; Dkt. 84-1 at 62. This request was also denied. *Id.*

REPORT AND RECOMMENDATION - 2

1  In July 2017, Mr. Johnson made two more requests to the care review committee: another request for opioid pain medication and another request for an orthopedic consult for his knee. Both of these requests were denied. *Id.* at 38-39. He contends that he has reported to Dr. Hammond and P.A. Neau that he is still in substantial, persistent, and constant pain as a result of knee condition. Dkt. 84 at 23, Dkt. 84-1 at 4-5. Mr. Johnson alleges that the defendants have refused to properly diagnose or treat his knee condition and that this will lead to continued pain and limitations on his daily activities.

2.  Cataracts

Mr. Johnson has suffered from cataracts in both eyes. He has also been diagnosed with diabetes, and, since 2005, has been receiving treatment for a potential side effect of diabetes – diabetic retinopathy. This is a condition that can pose a serious threat to a diabetic's retina and can lead to irreversible blindness. Dkt. 77, Decl. of John F. Reidy (Reidy Decl.) at 2. While at CRCC, Mr. Johnson received treatment from multiple doctors for his eye problems, including Dr. Maureen Fahey, Dr. Charles Sung—an outside ophthalmologist who primarily treated Mr. Johnson's diabetic retinopathy—and, most recently, defendant Dr. John F. Reidy. Dkt. 77-1 at 27, 35, 39 (Dr. Sung), Dkt. 77-1 at 36, 40-42 (Dr. Reidy); Dkt. 75, Decl. of Soknara Buth, at 1-2, Dkt. 75-1, at 2 (Dr. Fahey).

Mr. Johnson claims Dr. Fahey and Dr. Sung both recommended cataract surgery, Dr. Sung in May 2013 and Dr. Fahey in 2014. Complaint; Dkt. 5 at 6-8, 13.

The medical records show that a cataract was indicated in Mr. Johnson's right eye beginning in August 2012. Dkt. 77, Reidy Decl., Att. A; Dkt. 77-1 at 5. In April 2013, medical records show that the cataract in Mr. Johnson's right eye was "significant." *Id.* at 14. By September 3, 2015, cataracts were indicated in both of Mr. Johnson's eyes (although the right eye was indicated as worse). *Id.* at 17.

REPORT AND RECOMMENDATION - 3

1    Dr. Reidy stated that Mr. Johnson did not meet the DOC criteria for cataract surgery at
2    that time. *Id* at 24. The Offender Health Plan (OHP) used by the Washington DOC allows for a
3    cataract surgery for the "worse one eye if both eyes have best corrected V/A <20/60 -3." Dkt. 84,
4    Plaintiff's Response to Motion for Summary Judgment; Att. 6; Dkt. 84-7 at 22. Although Dr.
5    Reidy found Mr. Johnson ineligible for cataract surgery, he also noted that he had contacted the
6    outside ophthalmologist, Dr. Sung, to ensure that Mr. Johnson's cataract did not interfere with
7    Dr. Sung's ability to treat Mr. Johnson. Dkt. 77, Reidy Decl. at 2.

8    After he was diagnosed with cataracts, Mr. Johnson filed multiple grievances and
9    inquiries regarding this condition. He wrote a letters to defendants Warner and Morgan regarding
10   his desire for cataract surgery. Dkt. 84, Plaintiff's Response to Motion for Summary Judgment;
11   Att. 1; Dkt. 84-1 at 50-58. In response to these grievances and letters, Mr. Johnson was told that
12   the treatment for his eyes was in line with the OHP. *See* Dkt. 84, Plaintiff's Response to Motion
13   for Summary Judgment; Att. 1; Dkt. 84-1 at 52, 58.

14   After an examination on March 9, 2016, Dr. Reidy determined that Mr. Johnson met the
15   DOC criteria for cataract surgery. Dkt. 77, Reidy Decl. at 2. At that time, Dr. Reidy made a
16   referral for Mr. Johnson's cataract surgery. *Id.* Mr. Johnson's records indicate that he received
17   cataract surgery on his right eye in February 2017. Dkt. 77, Reidy Decl., Att. A; Dkt. 77-1 at 34.

18   An optometry examination on May 17, 2017, showed the vision in Mr. Johnson's right
19   eye to be 20/20. *Id.* at 35. This examination also documented a "mild cataract" in Mr. Johnson's
20   left eye. *Id.* An examination on July 5, 2017, further documented the cataract in Mr. Johnson's
21   left eye. *Id.* at 38. Despite the cataract, Mr. Johnson's left eye had a visual acuity of 20/30. Dkt.
22   77, Reidy Decl. at 3. Mr. Johnson contends that even after the cataract in his right eye has been

23
24
25

removed, he still has significant trouble seeing out of his left eye. Dkt. 84, Plaintiff's Response to Motion for Summary Judgment at 4-5, 17-18.

B.      Retaliation Claim against Defendant Mewes

Mr. Johnson also alleges that he was intentionally sprayed with pepper spray by defendant Forrest Mewes. Complaint; Dkt. 1. Officer Mewes states that this incident took place on October 14, 2015. Dkt. 74, Decl. of Forrest J. Mewes (Mewes Decl.) at 2. Officer Mewes states that he was attempting to break up a fight between two other prisoners. *Id.* Officer Mewes used pepper spray to end this altercation. *Id.* Officer Mewes states that he focused on the fight and did not know that Mr. Johnson was coming out of the door to the health care clinic. *Id.*

Mr. Johnson alleges that Officer Mewes "looked at Mr. Johnson and sprayed him in both eyes with pepper spray blinding-him [sic]." Mr. Johnson believes that this act was retaliation for Mr. Johnson's legal action[1] against "[Officer Mewes's] friends/colleagues who work in the mail room." Complaint; Dkt. 1. In his complaint, Mr. Johnson alleges that the pepper spray caused him to have difficulty focusing and gave him ongoing headaches. *Id.*

STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a

---

[1] It appears that Mr. Johnson has filed a separate lawsuit against other prison employees working in the mailroom. Mr. Johnson argues this is the cause for any retaliatory action against him. Besides providing this basis, this separate litigation appears to be unrelated this § 1983 claim.

REPORT AND RECOMMENDATION - 5

summary judgment motion is supported as provided in FRCP 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2).

The moving party must demonstrate the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural*, 818 F.2d at 1468. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

DISCUSSION

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

1  United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*,
2  *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an
3  alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d
4  1350, 1354 (9th Cir. 1985).

5  Defendants argue in their motion for summary judgment that Mr. Johnson is unable to
6  demonstrate deliberate indifference in his medical care and is also unable to prove his retaliation
7  claim. For the reasons set forth below, the undersigned recommends that the defendant's motion
8  be granted in part.

9  A.    <u>Eighth Amendment Medical Treatment Claims</u>

10  "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
11  inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d
12  1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong
13  test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by
14  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury
15  or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need
16  was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050,
17  1059 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d
18  1133 (9th Cir. 1997)). Deliberate indifference is shown by "a purposeful act or failure to respond
19  to a prisoner's pain or possible medical need, and [ ] harm caused by the indifference." *Id.* at
20  1096 (*citing McGuckin*, 974 F.2d at 1060).

21  The defendants must have known of and disregarded an excessive risk to the plaintiff's
22  health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A difference of opinion about treatment
23  between plaintiff and prison medical authorities "does not give rise to a § 1983 claim," but it
24  does not preclude one, either. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Hamby*

25

REPORT AND RECOMMENDATION - 7

*v. Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, J., concurring in part and dissenting in part).

The medical need must be serious in the constitutional sense, and the indifference to medical needs must be substantial. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("Either result is not the type of 'routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Gamble*, 429 U.S. at 104; *Hudson*, 503 U.S. at 9); *see also Brock*, 315 F.3d at 163 ("[W]e have long held that 'the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'") (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2nd Cir. 1977)).

An inmate, therefore, is not required "to demonstrate that he or she experiences pain that is at the limit of human ability to bear," nor does the inmate have to show "that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163. "[A] 'serious' need for medical treatment" may be present where there is:

> [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin*, 974 F.2d at 1059-60.

1. Mr. Johnson's Knee

Mr. Johnson alleges that that he suffers from a knee condition that causes him to endure chronic and substantial pain. Mr. Johnson has made multiple requests for an MRI of his knee and for opioid pain medication, all of which have been denied. Dkt. 73, Hammond Decl., Att. A; Dkt.

1  73-1 at 8. The plaintiff alleges that he was denied an accurate assessment of the condition

2  because the MRI diagnostic tests have not been approved. Dkt. 84, Plaintiff's Response to

3  Defendants' Motion for Summary Judgment; Dkt. 84-1 at 23-24.

4       Mr. Johnson argues that the treatments the defendants have provided in the past (two

5  cortisone injections in June and July 2015) were ineffective. Dkt. 84, Plaintiff's Response to

6  Defendants' Motion for Summary Judgment at 22. He asserts that the continuing knee pain limits

7  his daily activities. *Id.* at 19-25. In addition, he states that his knee sometimes gives out and

8  causes him to fall. *Id.* at 5, 25.

9       The medical records, interpreted in the light most favorable to Mr. Johnson's case, show

10  that the previous treatment by the defendants provided a certain amount of relief for Mr.

11  Johnson's knee pain. *See* Dkt. 73-1 at 2, 6, 13, 26 (medical records indicating injections and

12  physical therapy helped alleviate pain). The records also indicate that Mr. Johnson understood

13  the chronic nature of the condition. Dkt. 73, Hammond Decl., Att. A; Dkt. 73-1 at 26. Mr.

14  Johnson believes an MRI is required for accurate diagnosis and effective treatment of the

15  condition and that opioid pain medication is necessary to address the pain, while prison officials

16  maintain that these interventions would not be medically appropriate.

17       A difference of opinion between a physician or other care provider and a prisoner

18  concerning the appropriate medical care does not necessarily amount to deliberate indifference.

19  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish deliberate indifference in the

20  context of differing opinions between a prisoner and medical providers, the prisoner must

21  demonstrate that the course of treatment was medically unacceptable under the circumstances

22  and that this course of treatment was chosen in conscious disregard of an excessive risk to

23  plaintiff's health. *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996).

24

25

1    An injury that significantly affects an individual's daily activities or causes chronic and
2  substantial pain may indicate a serious medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059-
3  1060 (9th Cir. 1992). Mr. Johnson has made numerous claims about the extent of his pain and
4  the negative effects it had on his activities of daily living, and alleges that this pain warrants an
5  MRI and opioid medication.

6    Even if the Court assumes, without deciding, that Mr. Johnson's knee condition is a
7  serious medical need under the Eighth Amendment, Mr. Johnson has not satisfied the deliberate
8  indifference prong. Mr. Johnson and his care providers disagree about treatment options for his
9  knee. This difference in opinion does not meet the legal standard of deliberate indifference. *See*
10 *Estelle,* 429 U.S. at 107 ("[T]he question of whether an X-ray or additional diagnostic techniques
11 or forms of treatment is indicated is a classic example of medical judgment. A medical decision
12 not to order an X-ray, or like measures, does not represent cruel and unusual punishment.");
13 *Vaught v. Miranda*, 2012 WL 525573 at *11 (E.D. Cal. 2012) ("Plaintiff's belief that he should
14 have received an MRI is no more than a difference of opinions between plaintiff and the
15 defendants who provided and/or reviewed his medical treatment."), *aff'd*, 502 Fed. App'x 709
16 (9th Cir. 2013).

17    Mr. Johnson argues that his claims do not merely stem from a difference of opinion, but
18 instead that the defendants and prison health care providers have impermissibly denied and
19 delayed treatment that would alleviate his pain. Dkt. 84, Plaintiff's Response to Defendants'
20 Motion for Summary Judgment at 17. But beyond his assertions that an MRI and opioids are
21 needed, Mr. Johnson does not present evidence to create a genuine dispute of material fact as to
22 whether the care he received for his knee was medically unacceptable under the circumstances.
23 Mr. Johnson received continued treatment for his knee, including physical therapy and

injections. Interpreting the facts in the light most favorable to Mr. Johnson as the non-moving party, his condition was not ignored or disregarded. Mr. Johnson's treatment was based on a diagnosis of pes anserine bursitis, which Mr. Johnson does not dispute. Mr. Johnson's belief that he should have received an MRI shows only a difference of opinion between him and prison medical professionals. As such, defendant's motion for summary judgment should be granted as to this claim.

2. Mr. Johnson's Cataract Treatment

Mr. Johnson claims that that the defendants violated his Eighth Amendment rights by refusing cataract surgery in his left eye and by delaying the cataract surgery in his right eye. Specifically, he claims that the DOC policy regarding cataracts is a "one good eye" policy, which allowed the defendants to refuse Mr. Johnson treatment solely because of the policy, regardless of whether the treatment was medically indicated.

The plaintiff cites to *Colwell v. Bannister*, in which the United States Court of Appeals for the Ninth Circuit held that monocular blindness caused by cataracts is a serious medical need and is sufficient to demonstrate a claim under the Eighth Amendment. 763 F.3d 1060 (9th Cir. 2014). In *Colwell*, the plaintiff was completely blind in his right eye due to an advanced cataract. *Id.* at 1064. An outside ophthalmologist recommended cataract surgery for Colwell's right eye, but the requests for surgery were denied because of a de facto departmental policy that prisoners are not provided surgery as long as one eye is functioning. *Id.*

The court held that the monocular blindness caused by Colwell's cataracts, although not life-threatening, is still a serious medical need. *Id.* at 1066. However, the court distinguished Colwell's severe cataract from one that is minor and has little impact on the inmate's vision. *Id.* at 1067 (citing *Michaud v. Bannister*, 2012 WL 6720602 at *5). Further, the *Colwell* court specifically stated that "total blindness in one eye," in that instance the result of a severe cataract,

1  meets the standards for a serious medical need. *Id.* at 1068. In analyzing deliberate indifference,
2  the *Colwell* court took issue with the prison policy that prevented Colwell from getting
3  treatment. The court held that a reasonable jury could find that Colwell was forced to endure
4  blindness solely because of an unwritten "one good eye" policy. *Id.* at 1068.

5  Mr. Johnson alleges that his cataracts are a serious medical need and that he is being
6  denied treatment for them because of DOC's policy. Mr. Johnson has already had surgery on the
7  cataract in his right eye. Decl. of John Reidy, Att. A; Dkt. 77-A at 35. There is no medical
8  evidence in the record that his current vision in his left eye is significantly impaired, although the
9  presence of a cataract in that eye is well documented in the record. *Id.* at 17, 20, 24, 35. Mr.
10 Johnson also introduced evidence of the DOC's policy regarding cataracts, which authorizes
11 cataract treatment for the "worse one eye if both eyes have best corrected V/A <20/60."
12 Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. 1; Dkt. 84-7 at 22. He
13 alleges that his left eye cataract is a serious medical need and that he is being denied cataract
14 surgery on his left eye because of an unconstitutional DOC policy. Complaint; Dkt. 1 at 14.

15 Mr. Johnson's Eight Amendment claim should be dismissed on summary judgment as a
16 matter of law, because the cataract in his left eye is not severe enough to qualify as a serious
17 medical need. The *Colwell* holding, that total blindness due to cataract is sufficient to
18 demonstrate a claim under the Eighth Amendment, is important precedent. However, Mr.
19 Johnson's left eye cataract has been indicated as "mild" and his vision is still within range of the
20 OHP guidelines (i.e. better than 20/60-3). Plaintiff's Response to Defendants' Motion for
21 Summary Judgment, Ex. 1; Dkt. 84-7 at 22. Further, it seems that if Mr. Johnson's left cataract
22 continues to worsen, he would eventually qualify for another cataract surgery under the OHP.

1   Unlike *Colwell*, the DOC's policy does not mandate "one good eye." Although the policy
2   does indicate that the worst eye qualifies for cataract surgery, there is a threshold for
3   deterioration of the worse eye that would prevent monocular blindness. The OPH is further
4   distinguished from the policy in *Colwell* because, unlike *Colwell*, which involved a "case by
5   case" policy, the OHP sets out clear guidelines for when a prisoner qualifies for cataract surgery.
6   *Colwell,* 763 F.3d at 1069. Although the OHP does provide for cataract surgery for the worst
7   eye, if one eye should deteriorate beyond 20/60-3, that eye would qualify for cataract surgery
8   under the OHP. This is exactly what prompted the surgery on Mr. Johnson's right eye.

The medical records show that Mr. Johnson has suffered from cataracts in both of his eyes. He has already received surgery on his right eye. Although he still has a cataract in his left eye, this cataract has not deteriorated to the point of becoming a serious medical need. Further, the policy in the OHP does not demonstrate deliberate indifference as it sets a clear threshold for when cataract surgery is necessary. As such, neither the condition of Mr. Johnson's eyes nor the DOC's policy is insufficient to support his Eighth Amendment claim.

B.   Retaliation Claim

Mr. Johnson also raises a claim of retaliation against corrections officer Forrest Mewes. Mr. Johnson alleges that Officer Mewes intentionally sprayed oleoresin capsicum pepper spray ("O.C.") at him in retaliation for Mr. Johnson's litigation against Officer Mewes's colleagues who work in the mail room. Complaint; Dkt. 1. The undersigned infers that this claim alleges retaliation for Mr. Johnson's exercise of his First Amendment rights.

An allegation of retaliation for a prisoner's exercise of his First Amendment right to file grievances or pursue litigation against prison officials may support a claim under § 1983. *See Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994). Without this constitutional protection,

inmates would be left without a viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

For an incarcerated prisoner, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* at 567-568.

In granting Mr. Johnson's motion to compel, the Court found that DOC policy regarding the appropriate use of pepper spray is relevant to show the intent required for retaliation:

> If Plaintiff is to prove that the use of pepper spray was arbitrary, deliberate, and retaliatory, it would be relevant to show that any policies regarding the types of circumstances when the use of pepper spray is authorized were not implicated by the circumstances of Plaintiff's encounter with Sergeant Mewes. If Plaintiff can show that there are no policies that expressly authorized the level of force used against him under the circumstances of the subject confrontation, this would be probative of whether the use of force was arbitrary or retaliatory. While Defendants have stipulated that a retaliatory use of pepper spray would violate DOC policy, that stipulation does not negate that proving a retaliatory motive will likely require Plaintiff to somehow attempt to eliminate possible inferences that the circumstances of the confrontation justified the use of pepper spray.

Dkt. 94 at 2-3.

Because the parties have not conducted the necessary discovery, summary judgment on the retaliation claim would be inappropriate. FRCP 56(d) permits the Court to defer consideration of a summary judgment motion where a nonmovant shows that it cannot present facts it needs to oppose the motion. *See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (nonmovant must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists"). Mr. Johnson has made such a

showing here, in his motion to compel and his opposition to summary judgment. Accordingly, the Court should defer ruling on defendants' motion for summary judgment on the issue of retaliation.

C.	Qualified Immunity

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have known.'" *Kisela v. Hughes,* —— U.S. ——, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting *White v. Pauly*, 580 U.S. ——, ——, 137 S.Ct. 548, 551 (2017)). Qualified immunity is an affirmative defense to damages liability and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir. 1991). The Court must decide the qualified immunity issue at the summary judgment stage when the issue turns on questions of law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

In considering the first prong, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To meet the second prong, "existing precedent must have 'placed beyond debate the unconstitutionality of' the officials' actions, as those actions unfolded in the specific context of the case at hand." *Hamby v. Hammond,* 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting *Taylor v. Barkes*, —— U.S. ——, 135 S.Ct. 2042, 2044 (2015) (*per curiam*)). Although legal precedent need not be directly on point for a right to be classified as clearly established, the precedent that existed at the time of the challenged acts or omissions must have responded to the statutory or constitutional question with such clarity that the rule of law as applied to specific circumstances cannot be reasonably debated. *Rodriguez v. Cruz,* —— F.3d ——, 2018 WL 2424581, Slip Op. at 31 (No. 13-56292)

(9th Cir. May 30, 2018). Specificity is important: the facts of the current case must be sufficiently close to fact patterns from the existing precedent so that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela,* 138 S. Ct. at 1153.

Mr. Johnson is unable to defeat the assertion of qualified immunity by defendants Hammond, Morgan, Reidy, and Warner. As discussed above, Mr. Johnson is unable to show that these defendants violated his statutory or constitutional rights. Further, Mr. Johnson is unable to show that these defendants violated a clearly established right. The Ninth Circuit's precedent does not clearly mandate an MRI of Mr. Johnson's knee in circumstances such as the facts presented in this case. And there is no clearly established law that would require the defendants to provide cataract surgery more promptly for Mr. Johnson's right eye, or to surgically repair the cataract in his left eye under the specific circumstances here. The plaintiff is thus unable to present sufficient evidence, or clearly established law, to rebut these defendants' affirmative defense of qualified immunity.

D. <u>Excessive Force Claim</u>

As discussed above, the undersigned recommends that the Court grant defendants' summary judgment motion insofar as it requests dismissal of Mr. Johnson's deliberate indifference claims concerning medical treatment under the Eighth Amendment. However, Mr. Johnson's complaint also raised a claim that in pepper spraying him, Mr. Mewes used excessive force in violation of the Eighth Amendment. *See* Dkt. 5 at 15; *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (explaining standard for Eighth Amendment excessive force claim against officials confronted with prison disturbance); Dkt. 84 at 27-30 (Johnson briefed excessive force claim). Although the complaint did not cite the Eighth Amendment with respect to that claim, it asserted, among other statements, that Mr. Mewes's "unjustified decision to use excessive force

and spray pepper in Mr. Johnson face constitutes an assault." *Id.* Under the liberal pleading standards the Court applies to pro se litigants, this was sufficient to place Mr. Mewes on notice that Mr. Johnson was raising an Eighth Amendment excessive force claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Defendants did not address such a claim in their summary judgment motion. Dkt. 72. For this reason, as well, dismissal of defendant Mewes from this action is unwarranted.

CONCLUSION

Based on the foregoing discussion, because there is no genuine dispute of material fact concerning two of the plaintiff's claims, the undersigned recommends the Court **GRANT IN PART** the defendants' motion for summary judgment and dismiss with prejudice: (1) the Eighth Amendment medical claim concerning Mr. Johnson's knee and (2) the Eighth Amendment medical claim concerning Mr. Johnson's cataract. The Court should defer summary judgment as to plaintiff's retaliation claim against defendant Mewes.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **June 22, 2018**, as noted in the caption.

Dated this 6th day of June, 2018.

Theresa L. Fricke
United States Magistrate Judge