1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT EARLE JOHNSON,

                    Plaintiff,

        v.

FORREST MEWES,

                    Defendant.

CASE NO. 3:16-cv-05738-BHS-TLF

REPORT AND
RECOMMENDATION

NOTED: May 31, 2019

This matter is before the Court on a summary judgment motion by defendant Forrest Mewes. Dkt. 121. Plaintiff sued under 42 U.S.C. § 1983 for an alleged violation of his Eighth Amendment rights. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

For the reasons below, the undersigned recommends the Court deny defendant's motion for summary judgment.

<u>FACTS RELATING TO SUMMARY JUDGMENT</u>

The plaintiff, Robert Johnson, is an inmate at Coyote Ridge Corrections Center (CRCC) in Connell, Washington. He alleges that defendant Forrest Mewes intentionally and maliciously sprayed him with pepper spray, in violation of his Eighth Amendment right to be free of

REPORT AND RECOMMENDATION - 1

excessive force. Complaint, Dkt. 5, pp. 15, 17. The parties each present evidence supporting their versions of the facts.

**A. Undisputed Facts**

The parties agree that on October 14, 2015, two inmates were preparing to fight on a walkway at CRCC. Decl. of Forrest J. Mewes (Mewes Decl.), Dkt. 74, p. 2; Decl. of Robert Earle Johnson (Johnson Decl.), Dkt. 128, p. 1. Officer Mewes was on duty and approached the inmates. Mewes Decl., Dkt. 74, p. 2. Officer Mewes deployed his oleoresin capsicum (OC) pepper spray. *Id.* At some point—either before or after Officer Mewes deployed the spray—Mr. Johnson emerged onto the walkway from the door to the medical clinic. *Id.*; Johnson Decl., Dkt. 128, p. 1. The OC spray hit Mr. Johnson in the face. Dkt. 128, p. 1. Mr. Johnson then received treatment in the medical clinic. *Id.*

**B. Plaintiff's Account of the Pepper Spray Incident**

Plaintiff stated in a declaration and a deposition that he and inmates Kevin L. Booth and Cook came out of the medical clinic onto the walkway and saw two inmates "in a fight position." Johnson Deposition, Dkt. 84-7, pp. 59-61; Johnson Decl., Dkt. 128, p. 1. He heard someone say "break it up" and saw one of the inmates drop his hands. *Id.* He then saw Officer Mewes come over. *Id.* At this point the inmates were "just standing there face to face." Johnson Decl., Dkt. 128, p. 1. Plaintiff testified that Officer Mewes "looked at me and he just—just eye contact and he sprayed OC. And he hit me in the face and the chest." Johnson Deposition, Dkt. 84-7, pp. 59-

61; *see* Johnson Decl., Dkt. 128, p. 1; Johnson Decl., Dkt. 84-1, p. 5. Plaintiff perceived

Mewes's act as intentional, not negligent. Johnson Deposition, Dkt. 84-7, p. 68.[1]

In his complaint, Mr. Johnson alleged that the pepper spray caused him to have difficulty

focusing and gave him ongoing headaches. Dkt. 5, p. 15. In a declaration opposing the

defendants' summary judgment motion, plaintiff states that "defendant Mewes looked at me, we

made eye contact, and then he pulled out his Olecresin Capsacum ("pepper spray") container,

aimed and sprayed me in the face – blinding me." Dkt. 128 at 1. Plaintiff also contends that he

requested the CRCC's grievance coordinator to reserve the video camera footage because it will

show defendant Mewes deliberately sprayed me in the face with pepper spray, and would also

show the unnecessary use of excessive force." Dkt. 128 at 2. Later, during the discovery process,

plaintiff alleges the defendants produced video, but it was partially destroyed or edited—there

was no footage showing what happened after the inmates were engaged in a fight, and there was

no video of the events when Mewes sprayed the plaintiff. Dkt. 128 at 2-3. Plaintiff states that he

was charged for the medical services (a copay) after the spraying; and that he has suffered

painful headaches for more than ten months due to the spray. Dkt. 128 at 1-2.

Mr. Booth stated in a declaration that he saw Officer Mewes tell the two inmates to break

it up. Declaration of Kevin L. Booth, Dkt. 84-3, p. 28. He stated that Mewes came over and, after

looking plaintiff in the face "for a couple of seconds," sprayed plaintiff with OC. *Id.* Booth

---

[1] Mr. Johnson alleged in his complaint that this act was retaliation for Mr. Johnson's legal action against "[Officer Mewes's] friends/colleagues who work in the mail room." Complaint; Dkt. 1. Mr. Johnson also alleged that Mewes had deliberately sprayed him, making him "a victim of assault." Dkt. 5, pp. 15, 17. Mewes stated in a declaration that he did not remember Johnson, believed he had never met him, and had no knowledge of any litigation activity by him. Dkt. 74, p. 1. The Court dismissed the retaliation claim but not the excessive-force claim. Dkt. 95, 105.

wrote: "It looked as if Officer Mewes was aiming at Mr. Johnson because the spray didn't come close to the other two inmates. I was close behind Mr. Johnson and the spray didn't hit me either." *Id.*

**C.  Defendant's Account of the Pepper Spray Incident**

Officer Mewes stated in a declaration that he saw two inmates "standing face to face in a fighting stance." Mewes Decl., Dkt. 74, p. 1. He saw one throw punches at the other, and he ordered them to stop fighting and get on the ground. *Id.* They appeared to ignore him, so he "pulled out the OC dispenser and again ordered them to get on the ground." *Id.* They ignored him again, and he "believed that they were going to engage in a fight." *Id.* He sprayed a burst of OC, and the inmates then complied. *Id.* He stated: "At the time, I was focused on the fighting offenders and did not know that Mr. Johnson was about to exit through the health care door." *Id.*, p. 2.

**D.  Contemporary Reports**

In reports made soon after the incident, Officer Mewes gave the same account of the facts, stating that he sprayed both of inmates who had been preparing to fight and that they then complied. Dkt. 74-1, p. 5; *see also* Dkt. 74-1, pp. 15, 19, 23, 25 ("Use of Force Reports" containing same account). The reports indicate that both those inmates received decontamination from medical staff. Dkt. 74-1, p. 5. One of the reports adds that, as Mewes was spraying the OC, Johnson "walked out of the medical clinic and into the drift of the OC spray. Offender Johnson immediately retreated back in to the medical clinic waiting area," where he washed his face and received medical care. *Id.*, pp. 5-6; *see* Dkt. 74-1, p. 41 (incident report from medical staff).

The reports further indicate that, later that day, a Sergeant Todd asked Johnson "how he was doing." Dkt. 74-1, pp. 5-6. "Johnson said he was ok but was upset that he was the person

1   that got sprayed and the offender who was actually involved in the incident only got a minor

2   exposure." *Id.* Sergeant Todd wrote in an incident report that Johnson told him: "I was exiting

3   medical after diabetic line and there was two offenders getting ready to fight, I also heard a staff

4   member say stop fighting and the next thing I knew I was sprayed in the face." Dkt. 74-1, p. 35.

5   Sergeant Todd asked him about the use of force, and Johnson said, "if you are going to use that

6   type of stuff you should know how to use it." *Id.*

7       A month after the incident, Officer Mewes wrote a similar but more detailed account in

8   an internal letter. Dkt. 84-2, p. 22. He stated that, after he sprayed the first inmate, he turned to

9   spray the second inmate. As Officer Mewes attempted to do so, that inmate ducked, causing the

10   stream of pepper spray to shoot over the inmate's head and shoulder and strike Mr. Johnson. *Id.*

11   **E.  Video Evidence**

12       Defendant submitted video of the incident for the Court to review *in camera*. As both

13   parties acknowledge, the video is inconclusive as to which party's account of the events is

14   accurate. It shows an inmate push another inmate in the back, and the two inmates raising their

15   fists and shuffling as if to fight. A corrections officer approaches the inmates and speaks into a

16   remote speaker. All three leave the screen; one second later, one of the inmates reenters the

17   screen, lowering himself to the ground on his stomach. He remains there as more officers come

18   to respond, along with a motor cart. The second inmate does not reappear. The video does not

19   show the spraying.

20                                   MOTION TO STRIKE

21       Mr. Booth stated in his declaration that Mr. Cook, a fellow inmate, also witnessed the

22   pepper-spray incident, and that Mr. Cook "also believed Officer Mewes was aiming at Mr.

23   Johnson." Booth Decl., Dkt. 84-3, p. 28. Defendant moves to strike this statement in his reply.

REPORT AND RECOMMENDATION - 5

Dkt. 132, p. 1. The Court should grant that motion. Mr. Cook's account is not in the record and is inadmissible hearsay. Fed. R. Evid. 801(c), 802.

<u>STANDARD OF REVIEW</u>

Under Rule 56 of the Federal Rules of Civil Procedure (FRCP), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party is required to support its arguments on whether a genuine dispute of material fact exists by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56(c)(1). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*

1   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which

2   the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."

3   *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit

4   under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.

5   *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in

6   the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*

7   *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

8        In ruling on a motion for summary judgment, the Court must draw all reasonable

9   inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and

10  may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255; *see*

11  *also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot

12  disregard evidence at the summary judgment stage solely based on its self-serving nature, even if

13  it is uncorroborated). However, if videotape evidence contradicts the version of events that one

14  party asserts, "the court must "view[ ] the facts in the light depicted by the videotape." *Scott v.*

15  *Harris*, 550 U.S. 372, 380-81 (2007).

16                                    DISCUSSION

17       To sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he

18  suffered a violation of rights protected by the Constitution or created by federal statute, and (ii)

19  that the violation was proximately caused by a person acting under color of state law. *See*

20  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

21  satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

22  another's affirmative act, or omitted to perform an act which he was legally required to do that

23

1  caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

2  (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

3        Defendant argues in his motion for summary judgment that Mr. Johnson is unable to

4  prove his excessive force claim. For the reasons below, the Court should deny the motion.

5  **A.    Eighth Amendment Excessive Force Claim**

6        To prove that a defendant used excessive force in violation of his Eighth Amendment

7  rights, a plaintiff must show three elements: first, that "the defendant used excessive and

8  unnecessary force under all of the circumstances"; second, that "the defendant acted maliciously

9  and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or

10  restore discipline"; and third, that "the act[s] of the defendant caused harm to the plaintiff."

11  Model Civ. Jury Instr. 9th Cir. 9.26 (2018).

12        The "core judicial inquiry" is the second of these elements. *Hudson v. McMillian*, 503

13  U.S. 1, 7 (1992). Courts apply the "malicious and sadistic" standard "whenever guards use force

14  to keep order," regardless of "[w]hether the prison disturbance is a riot or a lesser disruption."

15  *Hudson*, 503 U.S. at 6; *see also Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en

16  banc) (noting that "greater showing" than deliberate indifference is required "in the context of a

17  prison-wide disturbance or an individual confrontation between an officer and a prisoner," when

18  "corrections officers must act immediately and emphatically to defuse a potentially explosive

19  situation").

20        The plaintiff must show more than a de minimis use of physical force, *Hudson*, 503 U.S.

21  at 8, but need not show significant injury, *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

22        The United States Court of Appeals for the Ninth Circuit has observed that "[b]ecause the

23  excessive force inquiry nearly always requires a jury to sift through disputed factual contentions,

1  and to draw inferences therefrom, we have held on many occasions that summary judgment or

2  judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v.*

3  *United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) *(*internal quotation marks omitted).

4         In *Manley v. Rowley*, the Ninth Circuit held that fact issues should have precluded the

5  district court from granting summary judgment on a prisoner's claim that officers used excessive

6  force to restrain him and remove him from his cell after an altercation with his cellmate. 847

7  F.3d 705 (9th Cir. 2017). A single surveillance camera had captured the plaintiff's cell

8  extraction. *Id.* at 709. After showing the plaintiff being removed from the cell, the camera

9  panned to capture his cellmate's removal. *Id.* The plaintiff alleged that, after the camera panned

10  away from him, the defendant officers "punched, kicked, and stomped him while he was

11  restrained in handcuffs and leg irons." *Id.* The defendants moved for summary judgment, and the

12  district court granted that motion. *Id.* at 710. "In so doing," the Ninth Circuit noted, "the district

13  court rejected Manley's testimony about the events at issue." *Id.*

14         The Ninth Circuit held that summary judgment was improper because "a genuine dispute

15  of material fact exists regarding whether Appellees' use of force resulted in the unnecessary and

16  wanton infliction of pain or suffering." *Id.* at 711. The court found that the evidence showed

17  multiple fact disputes:

18         Manley contends that he was beaten by corrections officers during the period
           when the camera panned away from him; Appellees claim that no such beating
19         occurred. The parties do not dispute that Manley was picked up by his wrist and
           leg restraints and carried horizontally to a holding cell. Manley, however, asserts
20         that this was a wanton use of force that caused him extreme pain and violated ESP
           training, while Appellees claim that their actions were necessary to restore and
21         maintain order—though they concede that it contravened officer training
           protocols.

22

23

REPORT AND RECOMMENDATION - 9

*Id.* The district court had based its analysis largely on a finding that the plaintiff's testimony was not credible because he had ingested methamphetamine at the time of the events. *Id.* The Ninth Circuit held that, instead, "Manley's testimony must be credited at this stage of the proceedings unless it is legally defective." *Id.* (citing *Anderson*, 477 U.S. at 255).

The record in this case shows fact disputes similar to those in *Manley*: A surveillance video shows the lead-up to the alleged use of force. The plaintiff states in a declaration that, outside the view of the camera, defendant made intentional, unnecessary use of force. And the defendant, in contrast, states that he used only legitimate force to keep order. As in *Manley*, the defendant implicitly asks the Court to find plaintiff's testimony (as well as that of inmate Kevin L. Booth) not to be credible, despite the requirement that the Court construe evidence in plaintiff's favor on defendant's motion for summary judgment.

Defendant bases his motion for summary judgment on his contention that a prison guard does not use excessive force in spraying OC to stop fights and restore order. Dkt. 121, pp. 2-5. While this argument has a legal basis, *see Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979), defendant avoids the issue before the Court at summary judgment—whether plaintiff has presented evidence from which a reasonable fact finder could conclude that Mewes sprayed the plaintiff directly in the face and chest with OC *not* for the purpose of stopping a fight and restoring order, but instead sprayed the plaintiff unnecessarily and maliciously.

Plaintiff has presented sufficient evidence to create such a fact issue. Plaintiff testified in a deposition that he came out of the infirmary onto the walkway and saw two inmates "in a fight position." Johnson Deposition, Dkt. 84-7, pp. 59-61. He heard someone say, "break it up" and saw one of the inmates drop his hands. *Id.*

He then saw Mewes come over: "and he looked at me and he just—just eye contact and he sprayed OC. And he hit me in the face and the chest." *Id.* Plaintiff maintained in his deposition that he perceived Mewes's act as intentional, not negligent. *Id.*, p. 68. A witness to the incident, Mr. Booth, corroborated plaintiff's testimony that Mewes came over and, after looking plaintiff in the face "for a couple of seconds," sprayed plaintiff with OC. Booth Decl., Dkt. 84-3, p. 28. Booth wrote: "It looked as if Officer Mewes was aiming at Mr. Johnson because the spray didn't come close to the other two inmates. I was close behind Mr. Johnson and the spray didn't hit me either." *Id.*

Defendant contends that contemporary reports show that the two inmates who had been preparing to fight were also sprayed. *See* Dkt. 121, p. 3; *see* Dkt. 74-1, p. 15. This would contradict Booth's testimony that the spray "didn't come close to the other two inmates" and so could be used at trial to lessen the credibility of Booth's testimony. *See* Booth Decl., Dkt. 84-3, p. 28. The Court cannot make credibility determinations at this stage, however. *Anderson*, 477 U.S. at 255.

Similarly, defendant also points to the reports of the incident that quote statements by plaintiff that seem to imply he believed the spraying was accidental. *See* Dkt. 74-1, p. 35. If admissible, this is evidence that a jury could rely on to disbelieve Mr. Johnson's account. The Court does not weigh evidence at this stage, however. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

Summary judgment should be granted if, when viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has shown a genuine dispute of material fact as to whether Mewes acted intentionally and maliciously to harm plaintiff. Because plaintiff has presented evidence that is sufficient to create such a dispute of fact, the Court should deny

1    summary judgment on his excessive force claim. *See Lewis v. Pugh*, No. C17-5227MJP, 2019

2    WL 325090, at *3 (W.D. Wash. Jan. 25, 2019) (holding summary judgment inappropriate where

3    plaintiff's declaration that prison guard struck him in face for no legitimate reason, "if true,

4    would indicate that [defendant] used force 'maliciously and sadistically for the very purpose of

5    causing harm' and not 'in a good faith effort to maintain or restore discipline' so as to support a

6    claim for excessive force in violation of the Eighth Amendment" [quoting *Hudson v. McMillian*,

7    503 U.S. 1, 6 (1992)]).

8    **B.  Qualified Immunity**

9         Defendant contends that, even if plaintiff has shown genuine disputes of material fact that

10   would preclude summary judgment on his excessive-force claim, defendant is nonetheless

11   entitled to qualified immunity because the right plaintiff asserts was violated was not "clearly

12   established." Mr. Mewes is incorrect.

13        Qualified immunity is an affirmative defense to damages liability and does not bar

14   actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v.*

15   *Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). To defeat a defendant's assertion of qualified

16   immunity, the plaintiff must establish both: (1) that defendant violated a statutory or

17   constitutional right; and (2) the "'right was clearly established at the time of the alleged

18   misconduct.'" *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting *Taylor v.*

19   *Barkes*, 135 S. Ct. 2042, 2044 (2015)). The Court may consider either step first. *Pearson v.*

20   *Callahan,* 555 U.S. 223, 236 (2009).

21        "To be clearly established, a legal principle must have a sufficiently clear foundation in

22   then-existing precedent. The rule must be 'settled law,' . . . which means it is dictated by

23   'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" *D.C. v. Wesby*,

138 S. Ct. 577, 589-90 (2018) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), and *Ashcroft v. al–Kidd*, 563 U.S. 731, 741-42 (2011)) (internal quotation marks omitted). As the Supreme Court recently emphasized, "[i]t is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

The Supreme Court "has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015)). Although a case need not be directly on point, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). A rule is too general if "the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 138 S. Ct. at 589 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987)).

Moreover, the settled legal principle must "clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. Courts are to apply "'a high degree of specificity'" to determine whether it would have been "'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2011), and *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)).

Here, plaintiff has satisfied the first prong of the qualified immunity analysis because, as discussed above, he has presented sufficient evidence that defendant used excessive force to survive summary judgment.

Defendant contends that, under the second prong, "the law on a single incident of use of OC on fighting inmates is actually clearly established in favor of Mewes, not Johnson." Dkt.

1    121, p. 6. He cites several district court cases deciding that the law was clearly established in the

2    defendants' favor in suits over use of OC spray to maintain order in prison. *Id.*; *see Howard v.*

3    *Nunley*, No. CV-06-00191-NVW, 2010 WL 3785536 at *4 (E.D. Cal. Sept. 24, 2010), *aff'd*, 465

4    Fed. App'x 669 (9th Cir. 2012) ("Supreme Court and published Ninth Circuit precedent have

5    little to say about the appropriate use of pepper spray or similar agents to enforce prison

6    discipline.").

7          But defendant's argument relies on factual assumptions that he has not proven at this

8    stage, thus ignoring the standard of review the Court applies at summary judgment. In deciding

9    qualified immunity on a motion for summary judgment, the Court considers "all disputed facts in

10   the light most favorable to the non-moving party" and grants to the non-moving party "all

11   reasonable factual inferences." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946, 948

12   (9th Cir. 2017).

13         When viewing the facts in this light, the cases defendant relies on are not analogous, as

14   they all involve use of pepper spray in an effort to maintain order and enforce discipline. For

15   example, in *Jennings v. Hays*, the defendant prison guard and plaintiff agreed that defendant

16   sprayed plaintiff after plaintiff blocked defendant from removing posted items, then refused to

17   leave the room or comply with defendant's orders. In ruling on qualified immunity, the court

18   concluded that "[t]he law is unclear regarding the parameters of the permissible use of pepper

19   spray to address inmates who disobey orders or interfere with officers in the performance of their

20   duties." No. CV10-8004-PCT-JAT, 2011 WL 1480038, at *6 (D. Ariz. Apr. 19, 2011); *see also*

21   *Brown v. Williams*, No. 1:09-CV-0092, 2011 WL 386852, at *7 (E.D. Cal. Feb. 3, 2011), *report*

22   *and recommendation adopted*, No. 1:09-CV-00792-LJO, 2011 WL 1344564 (E.D. Cal. Apr. 8,

23   2011) ("There is not a clearly established right for a prisoner to be free from pepper spray after

REPORT AND RECOMMENDATION - 14

1    being warned that it would be used and a prisoner continues to disobey a lawful order.").

2    Similarly, the Ninth Circuit observed in *Spain v. Procunier* that use of pepper spray "in small

3    amounts may be a necessary prison technique if a prisoner refuses after adequate warning to

4    move from a cell or upon other provocation presenting a reasonable possibility that slight force

5    will be required." 600 F.2d 189, 195 (9th Cir. 1979).

6         There are no facts in this case indicating that plaintiff was refusing to comply with orders

7    from prison staff like the plaintiffs in *Jennings* or *Spain*. If the Court accepted defendant's

8    version of the facts, defendant incidentally hit plaintiff with OC spray while attempting to stop

9    two inmates from fighting. But viewing the facts in plaintiff's favor, defendant intentionally

10    deployed OC spray in plaintiff's face.

11         Defendant is incorrect in asserting that "there are not any allegations of malice

12    unsubstantiated or not." Dkt. 121, p. 6. Although Johnson may not use the word "malice" in his

13    declaration, the plain implication of his and Booth's testimony—that Mewes stared at Johnson

14    before intentionally spraying him in the face—is that Mewes did so maliciously. *See Anderson*,

15    477 U.S. at 255 (Court draws reasonable inferences in favor of party opposing summary

16    judgment).

17         The Supreme Court held in *Hudson v. McMillan* that actions similar to those here (when

18    the facts are viewed in Johnson's favor)—gratuitously punching and hitting a prisoner while

19    escorting him between facilities—violate the Eighth Amendment. 503 U.S. 1, 7-10 (1992). That

20    case and cases following it make clear—and every reasonable officer would know—that

21    intentionally assaulting a prisoner with no disciplinary or other permissible purpose violates the

22    Eighth Amendment. *See id.* Accordingly, the Court should decline to grant summary judgment

23    for defendant based on qualified immunity.

1

<u>CONCLUSION</u>

2      Based on the foregoing discussion, because there are genuine disputes of material fact as

3 to plaintiff's excessive force claim, and because, when viewed in the light most favorable to

4 plaintiff, the facts do not show that defendant Mewes is entitled to qualified immunity, the

5 undersigned recommends the Court **DENY** the defendant's motion for summary judgment.

6      The parties have **fourteen (14) days** from service of this Report and Recommendation to

7 file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file

8 objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

9 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration

10 on **May 31, 2019**, as noted in the caption.

11      Dated this 15th day of May, 2019.

12

13

14      *Theresa L. Fricke*
_____

15      Theresa L. Fricke
United States Magistrate Judge

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 16